UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| George Martinez, | Case No. 13-cv-1150 (ADM/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| Scott Fisher, | |
| Respondent. | |

George Martinez, 10827-084, USP Pollock, U.S. Penitentiary, P.O. Box 2099, Pollock, LA 71467 (pro se Petitioner);[1] and

D. Gerald Wilhelm, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; and Gregory G. Brooker (on brief), United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN (for Respondent).

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Petitioner George Martinez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody ("Petition"). (ECF No. 1.) This action has been referred to the undersigned magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and D. Minn. LR 72.1.

For the reasons stated below, **IT IS HEREBY RECOMMENDED THAT** the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal

---

[1] It appears that, sometime after the Petition was filed, Petitioner was moved to the U.S. Penitentiary located in Pollock, Louisiana ("USP Pollock"). *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/. The Clerk's Office shall send a copy of this Report & Recommendation to both USP Pollock and the Federal Correctional Institution located in Sandstone, Minnesota.

1

Custody (ECF No. 1) be **DENIED AS MOOT** and this matter **DISMISSED WITHOUT PREJUDICE**.

## I.  FACTUAL BACKGROUND

Petitioner is a federal inmate currently incarcerated at USP Pollock, located in Louisiana.  *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/.  Prior to being transferred to USP Pollock, Petitioner was confined at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone").[2]  (Declaration of Angela Buege ¶ 3 ("Buege Decl."), ECF No. 6.)  Respondent is the warden of FCI-Sandstone.  (Resp't Resp. at 2, ECF No. 5.)

Petitioner was convicted of Possession With Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 841, and Failure to Appear in Court, in violation of 18 U.S.C. § 3146.  (Buege Decl. ¶ 3.)  Petitioner is serving a 150-month sentence, followed by five years of supervised release, imposed by Judge Glen E. Conrad of the United States District Court for the Western District of Virginia.  (Buege Decl. ¶ 3.)  Petitioner has a projected release date of May 8, 2017, via Good Conduct Time ("GCT") release.  (Buege Decl. ¶ 3.)

### A.  Cell Phone Discovery & Analysis

On June 15, 2012, Bureau of Prison ("BOP") staff members discovered a cell phone in the bathroom of a Texas federal correctional institution.  (Attach. B to Buege

---

[2] "It has long been established that once a court acquires jurisdiction with the initial filing of a habeas corpus petition against a petitioner's immediate custodian, the subsequent transfer of the petitioner and accompanying change in custody does not divest the court of that jurisdiction."  *Gianni v. Fed. Bureau of Prisons*, No. 09-cv-1166 (MJR/JSM), 2010 WL 1427318, at *5 n.6 (D. Minn. Feb. 12, 2010), *adopting report and recommendation*, 2010 WL 1427320 (D. Minn. Apr. 9, 2010), *aff'd*, 405 Fed. App'x 96 (8th Cir. 2010); *accord Griffin v. Ebbert*, 751 F.3d 288, 290 (5th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change." (citing cases)).

Decl. ("Incident Report"), ECF No. 6-1.)  The cell phone was sent for analysis to the BOP Intelligence Unit and the results were received on July 13.  (Incident Report.)  Four of the numbers contained on the cell phone were linked to Petitioner, including an attempt to secure a prescription drug for a fellow inmate.  (Incident Report.)

### B. Interview & Incident Report

Petitioner was interviewed on July 22.  (Incident Report.)  During the interview, Petitioner admitted to using the cell phone.  (Incident Report.)  Having a cell phone is considered to be in possession of a hazardous tool in violation of BOP policy.  28 C.F.R. § 541.3 ("108...Possession . . . of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g. . . . portable telephone, pager, or other electronic device).").

An Incident Report was subsequently prepared and delivered to Petitioner the following day, July 23.  (Incident Report.)  In Box 4 of the Incident Report, the "Date of the Incident" is listed as "4/13/2011."  (Incident Report.)  In Box 11 of the Incident Report, the incident is described as "Description of Incident  (Date: 12/29/2011  Time: 7:00 p.m.  Staff became aware of the incident)" followed by a paragraph describing the discovery of the cell phone, analysis conducted, and subsequent interview with Petitioner that took place in June and July 2012.  (Incident Report.)

### C. Administrative Proceedings

The Incident Report was reviewed by the Unit Discipline Committee, which referred it to the Discipline Hearing Officer ("DHO") for further hearing. (Incident Report.)

A hearing was held before the DHO on July 27, 2012. (DHO Report at 1, Attach. D to Buege Decl., ECF No. 6-1.) The DHO Report noted that Petitioner had received notice of the charge, i.e., a copy of the Incident Report on July 23; was advised of his rights on July 25; and waived staff representation. (DHO Report at 1.) The DHO received a memorandum, four photos, chain-of-custody documentation, and forensic information into evidence at the hearing. (DHO Report at 2.) Petitioner admitted to using the cell phone. (DHO Report at 1.) The DHO found that Petitioner committed the prohibited act of possessing a hazardous tool and sanctioned Petitioner as follows: disallowance of 40 days of GCT, 60 days of disciplinary segregation, and the loss of commissary, telephone, and visiting privileges for 365 days. (DHO Report at 3.)

Petitioner appealed the DHO's decision to the BOP's South Central Regional Office. (Attach. E to Buege Decl., ECF No. 6-1.) The South Central Regional Office noted the discrepancies between the date the cell phone was found, the date listed as the date of the incident, and the date on which staff supposedly became aware of the incident. (Attach. E to Buege Decl.) The South Central Regional Office determined that the disciplinary "process should begin anew to clarify the date of the incident and the date staff became aware of the incident," including a rehearing. (Attach. E to Buege Decl.)

Petitioner subsequently appealed the South Central Regional Office's decision to the BOP's Central Office. (Buege Decl. ¶ 15.) The Central Office did not respond within the time frame allotted and Petitioner has exhausted his administrative remedies.[3] *See* 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.").

From the record, it does not appear that the rehearing has taken place. (Buege Decl. ¶ 14.) In preparation for the rehearing, the Incident Report was subsequently rewritten at the request of the DHO. (Rewritten Incident Report, Attach. F to Buege Decl., ECF No. 6-1.) The Rewritten Incident Report lists "6/15/2012," the date the cell phone was found, as the "Date of the Incident," and "7/23/2012," the day after the interview in which Petitioner admitted to using the cell phone," as the date "Staff became aware of the incident." (Rewritten Incident Report.)

## II. PROCEDURAL HISTORY

Petitioner filed the instant Petition, asserting that the administrative remedy process violated his right to due process. (*See generally* Mem. in Supp. of Petition, ECF No. 3.) Petitioner seeks restoration of GCT, "return to the proper security level," and elimination of the Incident Report from "his file." (Mem. in Supp. of Petition at 1, 4.[4]) Respondent filed a response, arguing that the Petition should be denied on the merits.

---

[3] Respondent concedes Petitioner has exhausted his administrative remedies. (Resp't Resp. at 7.)

[4] Much of Petitioner's memorandum is numbered by paragraph. (*See generally* Mem. in Supp. of Petition.) There are two additional pages attached to the memorandum that begin with the heading "BP-11 Continuation Page," which are not numbered. (Mem. in Supp. of Petition at 7-8.) For consistency, the Court refers to pages in the memorandum by the CM/ECF page number.

(*See generally* Resp't Resp.) Thereafter, Petitioner filed a reply. (Pet'r's Rebuttal, ECF No. 10.)

### III. ANALYSIS

#### A. Petition is Premature

"[G]enerally[,] federal prisoners must exhaust all available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241." *Knight v. Jett*, No. 09-cv-2293 (JNE/JSM), 2010 WL 4052182, at *3 (D. Minn. Sept. 13, 2010), *adopting report and recommendation*, 2010 WL 4053278 (D. Minn. Oct. 14, 2010); *see Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). This exhaustion requirement "both protects administrative agency authority and promotes judicial economy." *Knight*, 2010 WL 4052182, at *3. "However, the exhaustion requirement, in the context of a Section 2241 Habeas Petition, is a judicially created requirement, and is therefore not jurisdictional. Accordingly, Courts have the discretion to waive exhaustion, and to reach the merits of the Petition." *Tovey v. Cruz*, No. 09-cv-508 (PAM/RLE), 2010 WL 391336, at *7-8 (D. Minn. Jan. 25, 2010) (citations omitted); *accord Knight*, 2010 WL 4052182, at *3 ("In this case, judicial discretion governs because Congress has not required exhaustion for habeas petitions brought under § 2241.").

Petitioner's case is somewhat unique in that it is undisputed that Petitioner has exhausted his administrative remedies, having sought review from the Central Office, the highest level of the BOP's Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10-.19 (Administrative Remedy Program). Given that the Central Office did not respond within the allotted time frame, the South Central Regional Office's determination that

"the [discipline] process should begin anew to clarify the date of the incident and the date staff became aware of the incident" stands, including the rehearing.  (Attach. E to Buege Decl.)  *See* 28 C.F.R. § 542.18.

As stated above, the rehearing has not yet occurred.  The rehearing is to address the timing concerns Petitioner raises here.  Although Petitioner asserts otherwise, it is difficult to see how the BOP's decision to grant a rehearing on the issues Petitioner complains of is either arbitrary or capricious.  (*See* Pet'r's Rebuttal at 2-3.)  In cases where a rehearing has been granted as part of the administrative remedy process and the prisoner is no longer subject to the outcome of the prior hearing *but the rehearing has not yet occurred*, courts have determined that § 2241 petitions addressing those sanctions imposed during the initial hearing are premature or moot.  *See, e.g.*, *Louis v. Carlson*, No. 14-cv-3126 (KAM), 2014 WL 5091720, at *2 (E.D. N.Y. Oct. 9, 2014) (denying § 2241 petition as moot where "rehearing process is underway"); *Nasheed v. Sepanek*, No. 12-cv-65-HRW, 2013 WL 323947, at *2-3 (E.D. Ky. Jan. 28, 2013) (denying § 2241 petition as premature where "BOP officials [had not yet] compl[ied] with the regional office's instructions to conduct a new hearing on the disciplinary offense charged in the incident report"); *cf. Zebrowski v. Gutierrez*, No. CV lii-9254-VAP (MAN), 2013 WL 6709762, at *9 (C.D. Cal. Dec. 11, 2013) (rehearing ordered by BOP was limited to addressing witness statement and did not begin the disciplinary process anew).  This is "because at a rehearing the DHO might find [the prisoner] not guilty of the . . . offense, or might find [the prisoner] guilty of a disciplinary offense but not order GTC forfeited." *Nasheed*, 2013 WL 323947, at *2.  Accordingly, this Court recommends that the Petition be denied

as moot and this matter be dismissed without prejudice for the rehearing process to be completed because, as the *Nasheed* court observed, Petitioner may not be found to have possessed a hazardous tool upon rehearing or the sanctions imposed, including the amount of GCT forfeited, may differ.

**B. Due Process**

In any event, Petitioner has received his due process. The loss of "good time credits as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)); *accord Louis v. Dep't of Corr. Servs. of Neb.*, 437 F.3d 697, 700 (8th Cir. 2006).

But, "due process rights are limited in the prison disciplinary context." *Louis*, 437 F.3d at 700.

> In general, when a prison disciplinary hearing may result in the loss of good time credits -
>
> > the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . . . [In addition,] the findings of the prison disciplinary board [must be] supported by some evidence in the record.

*Espinoza*, 283 F.3d at 951-52 (alteration in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). "This 'some evidence' standard 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of

the evidence.'" *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011) (quoting *Hill*, 472 U.S. at 455). "If there is 'any evidence in the record' that could support the finding of the disciplinary authority, then the sanctions comport with due process." *Id.* (quoting *Hill*, 472 U.S. at 455-56.)

### 1. Procedural Due Process Requirements

Here, procedural due process requirements were met. Notably, Petitioner does not argue otherwise. Petitioner received written notice of the charge on July 23, more than three days before the July 27 DHO hearing. (Incident Report; DHO Report at 1.) On July 25, approximately two days before the DHO hearing, Petitioner received written notification of his rights at the DHO hearing, including the right to call witnesses and present evidence. (Attach. C to Buege Decl., ECF No. 6-1.) Petitioner also waived staff representation. (DHO Report at 1.) Following the hearing, the DHO prepared a written report, which, among other things, listed (1) the evidence received, including Petitioner's admission that he used the cell phone as well as the documents considered; (2) the DHO's findings based on the evidence; and (3) the reasons for the sanctions imposed by the DHO. (*Id.* at 1-3.) This report was provided to Petitioner on August 17. (Buege Decl. ¶ 13.) Accordingly, there is no basis for habeas relief on due process grounds. *Sweesy v. Fed. Bureau of Prisons*, No. 08-cv-323 (PAM/JJK), 2009 WL 1244047, at *4 (D. Minn. May 4, 2009).

Petitioner asserts, however, that the lapse of time between when the incident took place and when he received the Incident Report exceeded the timeframe set forth in 28 C.F.R. § 541.5 and therefore resulted in a due process violation. (Pet'r's Rebuttal at 2-3;

9

*see* Mem. in Supp. of Petition at 1, 7.) Petitioner asserts that the timeframe was exceeded whether measured from (1) the erroneous 2011 date on which staff purportedly became aware of the incident and the 2012 delivery date of the Incident Report in the initial Incident Report, or (2) the ten-day period (July 13-23, 2012) between the date staff received the analysis linking Petitioner to the cell phone and the delivery of the Incident Report. (Pet'r's Rebuttal at 2-3; *see* Mem. in Supp. of Petition at 1, 7; Regional Admin. Remedy Appeal, Attach. E to Buege Decl.)

Under the regulations governing the inmate discipline program, an inmate "will *ordinarily* receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident." 28 C.F.R. § 541.5(a) (emphasis added). Notwithstanding the erroneous 2011 dates in certain parts of the Incident Report, the Incident Report contained a detailed narrative setting forth the correct information as follows:

> On *6/15/12*, at approximately 10:30 a.m., staff discovered a Motorola cell phone (i465), in the Tilden Unit C wing bathroom. The cell phone was assigned the Evidence Control Number TRV-12-0068. The cell phone was sent to the Federal Bureau of Prison [sic] Intelligence Unit on *6/18/12*. On *7/13/12*, the SIS office received cell phone forensic analysis (0849-12-TRV), with positive results. The reports contained 20 telephone numbers as well as several photos. Four of the phone numbers . . . were linked to [Petitioner]. . . . [Petitioner] was interviewed no [sic] *7-22-12*, and admitted to using a cell phone while at the Three Rivers Camp.

(Incident Report (emphasis added).) *See Stanko v. Rios*, No. 08-cv-3102 (JNE/JJG), 2009 WL 1066021, at *5 (D. Minn. Apr. 20, 2009) (despite "formal errors" in coding of charges, prisoner suffered no prejudice and no due process violation where prisoner "had

10

ample notice of the underlying allegations and the nature of his offenses, several days before the hearing"), *aff'd*, 366 Fed. App'x 706 (8th Cir. 2010) (per curiam).  While Petitioner is correct that the BOP received forensic analysis suggesting a link between Petitioner and the cell phone on July 13, the BOP was not able to confirm that Petitioner had in fact possessed the cell phone until he admitted to doing so during the July 22 interview.  Petitioner received the Incident Report in the afternoon of July 23, (Incident Report), within the ordinary 24-hour window under 28 C.F.R. § 541.5(a).

But,

> [e]ven if Petitioner could establish that some of the BOP regulations were not met here, this would not entitle him to habeas relief.  Habeas relief is only available for a violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c), 2254(a).  "[T]here is no federal constitutional liberty interest in having . . . prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir.2003).  In fact, any liberty interest "must be an interest in the nature of the prisoner's confinement, 'not an interest in the procedures by which the state believes it can best determine how he should be confined.'"  *Id.* (quoting *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir.1996)).
>
> The focus, then, must be on the potential due process constitutional violation, not on compliance with BOP regulations.  That is not to say that BOP's compliance with its regulations is unimportant; on the contrary, a violation of the BOP regulations might be an important factor in determining whether Petitioner's due process rights were abridged.  But in the end, to be entitled to habeas relief, an inmate must establish a violation of the *Wolff* due process standards.  And that is why courts have consistently refused to find due process violations based solely on prison staff's non-compliance with BOP regulations governing disciplinary process.

*Martinez-Fuentes v. Fisher*, No. 10-cv-00988 (PJS/JJK), 2011 WL 2112428, at *5 (D. Minn. Apr. 5, 2011) (alteration in original) (citing cases), *adopting report and recommendation*, 2011 WL 2112420 (D. Minn. May 27, 2011).

Indeed, "§ 541.15(a) does not require notice within this [24-hour] period. The regulation only provides that notice 'ordinarily' shall be during this time, which indicates notice during this is not mandatory." *Stanko*, 2009 WL 1066021, at *6; *accord Dedrick v. Daniels*, 386 Fed. App'x 810, 811 (10th Cir. 2010) ("The language employed in these [BOP] rules makes clear that the time frames are aspirational, not mandatory."). The key 24-hour period is the 24 hours preceding the hearing. "[D]ue process only requires that a prisoner receive notice of charges [24] hours *before* the disciplinary hearing." *Stanko*, 2009 WL 1066021, at *6; *accord Lang v. Sauers*, 529 Fed. App'x 121 (3rd Cir. 2013) (per curiam) ("*Wolff* only requires that an inmate receive written notice of the charges 24 hours before a hearing."). It is undisputed that Petitioner received notice of the charges more than three days before the hearing.

Moreover, Petitioner has not shown any prejudice. Petitioner has not claimed, for example, that he was confused about when the incident actually occurred or the nature of the charge. *See Stanko*, 2009 WL 1066021, at *5 ("[S]o long as the original charges identified the substance of the offense and allowed the prisoner to present an informed defense, the prisoner suffers no prejudice."). Similarly, Petitioner has not claimed any prejudice as a result of the ten-day delay between when the BOP received the cell phone analysis and when Petitioner was given the Incident Report. *See id.* at *4-5; *see also Millhouse v. Bledsoe*, 458 Fed. App'x 200, 203 (3rd Cir. 2012) (per curiam) ("Milhouse

12

[sic] cannot show that his right to due process was violated by a technical non-compliance with a regulation where any delay did not prejudice him."); *Dedrick*, 386 Fed. App'x at 811-12 ("And Mr. Dedrick makes no showing, or even a claim, that he was prejudiced by the slight beyond the optimal timing."). "If there is no indication that an error would have altered the result of the disciplinary proceedings, then the prisoner suffers no prejudice and there is no violation of due process." *Stanko*, 2009 WL 1066021, at *4 (citing *Griffin-Bey v. Bowersox*, 978 F.2d 455, 456 (8th Cir. 1992) (per curiam)).

### 2. Some Evidence

"Although due process rights are limited in the prison disciplinary context, they require, *inter alia*, that good-time credits may be revoked only if revocation is supported by some evidence in the record." *Louis*, 437 F.3d at 700 (quotation omitted); *accord McCoy v. Lockhart*, 5 F.3d 532, at *2 (8th Cir. 1993) (per curiam) ("In the prison disciplinary context, due process requires only that the inmates be afforded the procedures set forth in *Wolff*, 418 U.S. at 563-72, and that there is 'some' evidence supporting the disciplinary determination." (quoting *Hill*, 472 U.S. at 455-56)). "[T]he some evidence standard 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.'" *Espinoza*, 283 F.3d at 952 (quoting *Hill*, 472 U.S. at 455). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Here, among other things, the DHO had the Incident Report; a memorandum from the reporting employee discussing how the incident was investigated, including the cell phone analysis, which was attached, as well as Petitioner's admissions to using the cell phone during the interview; and Petitioner's admission to the DHO that he used the cell phone.  The Court concludes that there is more than some evidence to support the disciplinary determination in this case. *See Warda v. Anderson*, 143 Fed App'x 725, 725 (8th Cir. 2005) (per curiam) (disciplinary determination based on some evidence where, "[a]mong other things, the hearing officer considered an incident report describing how a cooler with Warda's name on it and containing contraband was found under his bed during a search of his cubicle" and "a memorandum which stated an FBI special agent had interviewed Warda and Warda's cubicle-mate, and had determined the items belonged to Warda").

[Continued on next page.]

## IV.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal Custody (ECF No. 1) be **DENIED AS MOOT**.

2. This matter be **DISMISSED WITHOUT PREJUDICE**.


Date: May 6, 2015               s/ Tony N. Leung
                                Tony N. Leung
                                United States Magistrate Judge
                                District of Minnesota

                                *Martinez v. Fisher*
                                Case No. 13-cv-1150 (ADM/TNL)


NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by June 6, 2015, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Eighth Circuit Court of Appeals.